IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 8, 2013

## QUANTEL TAYLOR v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Crockett County**
**No. 3706      Clayburn Peeples, Judge**

---

**No. W2012-00760-CCA-R3-PC - Filed April 29, 2013**

---

Petitioner, Quantel Taylor, appeals from the denial of his petition for post-conviction relief. Petitioner entered "best interest" guilty pleas to second degree murder, attempted first degree murder, and especially aggravated robbery, and received agreed upon sentences of 20 years for each offense to be served concurrently at 100 percent. In this direct appeal, Petitioner asserts that the trial court erred by denying post-conviction relief because Petitioner's trial counsel was ineffective and his plea was involuntarily and unknowingly entered. The post-conviction court erred by granting the State's prehearing motion to quash subpoenas and by refusing to allow Petitioner to present an offer of proof at that hearing. However, in light of the proof at the post-conviction hearing the error, though flagrant, was harmless. The judgment is therefore affirmed.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JERRY L. SMITH and D. KELLY THOMAS, JR., JJ., joined.

S. Jasper Taylor, IV, Bells, Tennessee, for the appellant, Quantel Taylor.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Garry G. Brown, District Attorney General; and Hillary Lawler Parham, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

## Preliminary Proceeding

In his amended post-conviction petition, Petitioner alleged that his guilty pleas were involuntarily and unknowingly entered and that his trial counsel was ineffective. Among the reasons Petitioner asserted in his petition that his counsel was ineffective was counsel's failure to investigate the case and discover witnesses. In this appeal, Petitioner contends that his trial counsel failed to interview his co-defendants, who Petitioner testified at the post-conviction hearing "would have told [trial counsel] [Petitioner] had no parts of what happened or whatever."

Prior to the post-conviction hearing, Petitioner requested the issuance of subpoenas for his co-defendants Eugene Spivey, Chad Bricco, and Jeffery Allen, who were all incarcerated, to testify at the post-conviction hearing. The State filed a motion to quash the subpoenas. The motion states in part:

> Compliance with the above referenced subpoenas and requests for transport orders of the above referenced individuals to be brought to Court on June 20, 2011, by the Crockett County Sheriff's Department is unreasonable and oppressive and should be quashed or in the alternative, the above referenced individuals should be deposed from a secure location.

At a hearing on the State's motion to quash, the trial court granted the State's motion and denied Petitioner's request to make an offer of proof. The transcript of the hearing reads, in its entirety, as follows:

> This cause came on to be heard before the Honorable Clayburn Peeples, Judge, in the Circuit Court for Crockett County, Tennessee on the 23rd day of June, 2011 and the following proceedings were had, to-wit:

| THE COURT: | Now, let's talk about Quantel Taylor. What's the situation here? |
|---|---|
| [Petitioner's counsel]: | I submitted a subpoena list. |
| THE COURT: | Why would those people's testimony be relevant in a Post Conviction Hearing? I don't even know at this point what the State's position about their presence is. |

| | |
|---|---|
| [Petitioner's counsel]: | They filed a Motion to Quash. |
| THE COURT: | Well, I know it, but everybody was going to look into it and see what they thought. |
| [Assistant District Attorney]: | At this point, I don't see how any of the co-defendants would be able to enlighten us on whether or not [Petitioner] entered a knowing[ ] and voluntary plea. In addition to that, the State feels like that would be a great burden on the Crockett County Sheriff's Department based on – |
| **THE COURT:** | **It would be a great burden on all the people who had to sit and listen to it.** |
| [Assistant District Attorney]: | Yes. |
| THE COURT: | I don't mean that as flippantly as it sounded like I did. It is. It's tremendously expensive, but there could be a reason and I'm willing to listen to it. |
| [Petitioner's counsel]: | I'd like to have [Petitioner] testify. |
| THE COURT: | I want to know why you think those witnesses could add anything relevant to his testimony about his plea. |
| [Petitioner's counsel]: | I've talked to [Petitioner] and based on what he's told me what they could – what he's told me they could testify to was he was not involved in the burglary or the murder. |

| | |
|---|---|
| THE COURT: | I understand him wanting that known, but what does that have to do with his entering the plea or not? He's trying to shore up the fact that he wasn't guilty when he pled guilty. Is that – |
| [Petitioner's counsel]: | Yes, Your Honor. |
| THE COURT: | I don't – |
| [Petitioner's counsel]: | I would like to get on the record his testimony on what he says those people will say. |
| THE COURT: | When we have the Hearing I will let him do that, but I'm not going to let him do that right now. If you're telling me they're going to say he didn't have anything to do with it, then that's irrelevant for purposes of this Hearing. |
| [Petitioner's counsel]: | When you refer to this Hearing, are you talking about the Post Conviction Petition? |
| THE COURT: | Post Conviction Hearing. |
| [Petitioner's counsel]: | So at the time we have the Hearing on the Post Conviction Relief he's going to testify under oath what these people would have said if they had been here and not for the purposes of this Motion. |
| THE COURT: | It doesn't matter what they would have said about his involvement for purposes of this Motion that I know of. You may disabuse me of that, but I don't think you're going to. How could it be relevant in this case? |

| | |
|---|---|
| [Petitioner's counsel]: | Well, it may or may not be. The problem I see is if this is appealed then the Court of Appeals [sic] is going to state that, well, you didn't get in the record – |
| **THE COURT:** | **You've tried to do that and I've denied your request.** |
| [Petitioner's counsel]: | Right. |

(Emphasis added).

As is shown from the transcript, absolutely no evidence was presented by the State in support of its motion to quash the subpoenas. The post-conviction court concluded that the testimony of Petitioner's co-defendants was irrelevant to a determination as to whether Petitioner's guilty pleas were voluntarily and knowingly entered. However, the post-conviction court completely overlooked Petitioner's allegation that his trial counsel was ineffective for failing to properly investigate and interview those witnesses before trial. Petitioner's assertion that he was denied the effective assistance of counsel was given no consideration by the post-conviction court at the motion hearing. It is well-settled that when a claim of ineffective assistance of counsel is predicated upon counsel's failure to present potential witnesses, the testimony of those witnesses should be offered at the post-conviction hearing. Normally, the failure to present such witnesses precludes this court and the post-conviction court from making a determination of how the petitioner was prejudiced by trial counsel failing to present their testimony. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Normally, an appellate court cannot decide the issue of whether trial counsel's failure to call witnesses was ineffective when a petitioner is denied the opportunity to present their testimony at the post-conviction hearing.

The post-conviction court denied Petitioner's request to make an offer of proof. The general rule is that "'assuming an offer of proof has been seasonably made, it is error for the trial court to refuse to permit counsel to state what evidence he is offering.'" *Allen v. State*, 882 S.W.2d 810, 815-16 (Tenn. Crim. App. 1994) (quoting 89 A.L.R., Offer of Proof-Ruling-Error, § 2 at 283 (1963)). Tennessee Rule of Evidence 103 provides as follows:

> (a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection. – In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context; or

(2) Offer of Proof. – In case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context. Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve claim of error for appeal.

(b) Record of Offer and Ruling. – The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made, and the ruling. It **shall** permit the making of an offer in question and answer form. . . .

Tenn. R. Evid. 103 (emphasis added).

In *Alley*, this court explained, "[c]onsequently, though not explicitly stated [in Tennessee Rule of Evidence 103], it is apparent that courts are required, in appropriate circumstances, to allow offers of proof when the evidence is excluded so as to enable consideration of the issue on appeal." *Alley*, 882 S.W.2d at 815-16. This court held that it is error for a trial court to refuse to grant an offer of proof in certain circumstances. *Id*. at 816. This court stated:

In circumstances in which it is obvious from the record that the proffered evidence could, under no circumstances, be relevant to the issues, a trial court's refusal to grant an offer of proof is not error. However, if the obvious incompetence or irrelevance is not readily apparent from the record, it is error to exclude any reasonable offer which demonstrates the relevance and general import of the excluded evidence.

The reason for such a rule is quite clear. When a party contends that the trial court erred in excluding testimony, the need for a description of that testimony is compelling. Absent such a showing, an appellate court cannot determine whether the exclusion was error, and if error is found, whether the error is harmless. . . .

If the record of a post-conviction proceeding does not contain all evidence that this court may find admissible, we cannot determine whether the

-6-

evidence preponderates against the trial court's findings. Nor can we determine whether the trial court erred in excluding evidence that may arguably be relevant to issues raised in the post-conviction proceeding.

*Id*. at 816-17.

Although Petitioner's brief fails to state what he believes his co-defendants would have testified to had the post-conviction court not quashed the subpoenas, we conclude that the excluded testimony was not obviously incompetent or per se irrelevant at the time of the motion hearing, because the testimony was directly related to Petitioner's ineffective assistance claim. *See e.g. Timothy Johns v. State*, No. W2003-00677-CCA-R3-PC, 2004 WL 787146 (Tenn. Crim. App., Apr. 12, 2004), *no perm. app. filed*. Petitioner contended in his petition that counsel was ineffective because she advised Petitioner to plead guilty without conducting a thorough investigation and interviewing key witnesses. Petitioner argued that his guilty plea was involuntary because of the ineffective assistance of counsel. At the time of the motion hearing, the testimony of Petitioner's co-defendants could be relevant to show what counsel would have discovered had she interviewed these witnesses. Since the testimony was not obviously incompetent or irrelevant, the post-conviction court should have allowed counsel to make the requested offers of proof.

The State presented no evidence to support a motion to quash subpoenas for Petitioner's co-defendants. Absent *any* evidence, the motion should have been denied. However, the error was harmless in light of the record discussed below.

**Post-Conviction Hearing Analysis**

At the post-conviction hearing, Petitioner testified that his trial counsel failed to properly investigate the case, failed to interview his co-defendants, failed to explain the offenses he was charged with, failed to advise him of compulsory process, and failed to explain to him that an accomplice's testimony alone is insufficient to sustain a conviction. Petitioner testified that counsel should have subpoenaed several witnesses, including his co-defendants, who would have testified at trial that he "had no parts of what happened or whatever[;]" however, none of those witnesses testified at the post-conviction hearing.

Petitioner testified that trial counsel "coerced" and "pressured" him into accepting the State's plea offer. He testified that counsel told him that the State was seeking the death penalty and that if he did not accept the plea offer, he would have received a life sentence if convicted at trial. Petitioner also testified that counsel did not adequately prepare for his defense and that she only met with him "when she[ ] want[ed] [him] to cop out to something, telling [him] this [plea offer] is what she wanted [him] to do." Petitioner testified that he

received other plea offers from the State before accepting the final plea offer. He testified that trial counsel "would get mad at [him]" for not accepting the plea offer. Petitioner also "thought [trial counsel] said [he would serve] nine years."

Petitioner testified that he did not pay attention to the trial judge's statement of the agreed upon sentence at the guilty plea hearing, that he did not remember the plea hearing, and that he was taking medication prescribed to him by his "mental health doctor" at that time. Petitioner also did not recall signing the guilty plea form. He testified, "I have no idea. I don't know. I probably did." He did not recall answering any of the trial judge's questions at the guilty plea hearing.

Petitioner's trial counsel testified that she had been employed as an Assistant Public Defender for 21 years. She was appointed to represent Petitioner. Counsel testified that she "spent more time on [Petitioner's] case than any that [she] ever had before." She "made numerous trips to the jail to see him, more than once in some weeks." Counsel hired two investigators to work on the case. Counsel testified that she was aware Petitioner had suffered a head injury. Petitioner underwent a "standard mental evaluation," and it was determined that he was competent to assist in his defense and that Petitioner's mental state did not provide him with a defense in this case. She testified that Petitioner indicated he understood their discussions, but then he would ask about the same issues repeatedly.

Trial counsel "talked with numerous witnesses." She testified that she "made numerous efforts to talk with Jeffrey Allen[,]" one of Petitioner's co-defendants. After Mr. Allen was convicted, trial counsel "spent half an afternoon at the jail trying to get permission to talk with Mr. Allen and his lawyer came back and said, [']He doesn't want to talk with you.[']" Trial counsel also had subpoenas issued for witnesses Petitioner wanted her to call to testify at trial, but that those witnesses would have harmed Petitioner's case. She testified that other evidence, including Petitioner's own statement, contradicted Petitioner's defense that he did not know his co-defendants intended to rob the victims. She testified that the State's case against Petitioner was strong.

Counsel testified that she read the guilty plea form and an explanation of rights form to Petitioner and advised him of his sentence and release eligibility and that Petitioner signed both documents. She also explained the elements of the crimes with which Petitioner was charged and the legal concept of criminal responsibility. Counsel testified that she was prepared for trial and was "surprised" when Petitioner agreed to accept the State's plea offer.

At the conclusion of the evidentiary hearing, the post-conviction court found that trial counsel "went to extraordinary lengths to protect [Petitioner]'s rights." The court found that counsel thoroughly investigated the case and "made extensive trial preparations[.]" The court

also found that "[t]here [wa]s nothing whatsoever in th[e] record that indicates that [Petitioner's] plea was coerced." The post-conviction court denied Petitioner's request for post-conviction relief.

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below the standard range of competence. Second, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). As to guilty peas, the petitioner must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the plea. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). When determining the knowing and voluntary nature of a guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *see also State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999).

In order for a guilty plea to be voluntary, the petitioner must have an understanding of the charges against him and the consequences of pleading guilty, including "the sentence that he will be forced to serve as the result of his guilty plea and conviction." *Id*. at 905. A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

We conclude that the record supports the post-conviction court's findings that trial counsel more than adequately prepared for trial. Counsel interviewed witnesses, had subpoenas issued, and thoroughly discussed with Petitioner the issues, trial strategy, and potential sentences.

We also conclude that Petitioner has failed to establish that but for counsel's alleged deficiencies he would not have pleaded guilty and would have insisted on going to trial. Petitioner did not testify that he would not have pleaded guilty had trial counsel not performed the errors which Petitioner alleged. Absent such testimony, Petitioner is precluded from showing that he was prejudiced by counsel's alleged deficiencies. The transcript of the guilty plea hearing shows that Petitioner expressed his understanding of his rights and the effect a guilty plea had on his rights. Petitioner acknowledged that he signed the guilty plea form. The trial court explained the offenses to which Petitioner was pleading guilty and the sentence Petitioner was receiving. Petitioner acknowledged that he understood. Petitioner stated that he was satisfied with his counsel's representation. Trial counsel testified at the post-conviction hearing that she advised Petitioner of the charges against him, the possible sentences, the strengths, and more applicable, the weaknesses of his case, and counsel testified that she did not pressure Petitioner to accept the State's plea offer. The post-conviction court clearly accredited trial counsel's testimony and discredited Petitioner's.

Because we conclude that the record fails to show any prejudice to Petitioner as to any alleged deficient performance by his attorney, the post-conviction court's error in quashing Petitioner's subpoenas is rendered harmless.

## CONCLUSION

Based on the foregoing reasons, we affirm the judgment of the post-conviction court.

_____

THOMAS T. WOODALL, JUDGE